**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| YOCASTA SANCHEZ, ) | |
|           Plaintiff(s), ) | Civil Action No. 16-CV-8677 |
| v. ) | |
| ) | COMPLAINT AND |
| ROBERT C. EHRLICH, ) | JURY DEMAND |
| JAMIE L. HEIBERGER, ) | |
| HEIBERGER & ASSOCIATES, P.C., ) | |
| DANIEL WRUBLIN, ) | |
| DALAN MANAGEMENT ASSOCIATES, INC., ) | |
| 682 INWOOD OWNER, LLC, ) | |
|           Defendant(s). ) | |
| ) | |

## COMPLAINT

### INTRODUCTION

1. This is an action for money damages, declaratory relief and injunctive relief brought by Plaintiff seeking redress for unlawful practices relating to her tenancy at 682 Academy Street, Apt 45, New York, NY 10034 (hereinafter "the apartment"), and collection of rental arrears and setting forth Defendants' violations of the Fair Debt Collection Practices Act (hereinafter "FDCPA"), 15 U.S.C. § 1692, *et seq*., New York General Business Law (hereinafter, "GBL") § 349, *et seq*., and setting forth common law claims for Malicious Prosecution, Abuse of Process, Negligence per se, and Gross Negligence.

2. Plaintiff brings suit on an individual basis stemming from the unfair, abusive and fraudulent practices and schemes employed by Robert C. Ehrlich Esq. and Jamie L. Heiberger Esq., Heiberger & Associates, P.C., Daniel Wurblin, Dalan Management Associates, Inc., and 682 Inwood Owner, LLC, in seeking to evict Plaintiff from her apartment.

3. Plaintiff, Yocasta Sanchez, is a disabled mother and holder of a federal Section 8 voucher

1

administered by the New York City Housing Authority (hereinafter "NYCHA"), which limits her rental obligation to approximately thirty percent of her income; the balance on her rent is paid by the Section 8 rental subsidy.

4. On or about April 24, 2012, November 18, 2013 and November 10, 2015, Heiberger & Associates P.C. (hereinafter "Heiberger firm"), as attorneys for landlord, 682 Inwood Owner LLC (hereinafter "Inwood Owner"), mailed Ms. Sanchez debt collection letters threatening to evict her if she failed to pay rental arrears that she did not owe.

5. On or about May 25, 2012, December 9, 2013 and November 19, 2015, Defendants, Jamie L. Heiberger, the principal of the Heiberger firm, and Robert C. Ehrlich (hereinafter "Ehrlich"), a partner at the Heiberger firm, filed nonpayment proceedings against Ms. Sanchez in the Housing Part of the Civil Court of the City of New York on behalf of Inwood Owner, to evict her from the apartment for rental arrears that she did not owe in violation of federal and state law. All three eviction proceedings were discontinued without Plaintiff being liable for any unpaid rent.

6. Defendants, Jamie Heiberger, Ehrlich and the Heiberger firm, violated the FDCPA by repeatedly making false and deceptive representations in their demand letters and eviction pleadings that Ms. Sanchez owed rental arrears to Inwood Owner. Defendants, Heiberger, Ehrlich, Heiberger firm, Daniel Wrublin (hereinafter "Wrublin"), Dalan Management Associates, Inc. (hereinafter "Dalan Management"), and Inwood Owner, repeatedly filed lawsuits and pursued collections attempts for rental arrears that Ms. Sanchez did not owe, actions that constitute a violation of GBL § 349, Malicious Prosecution, Abuse of Process, Negligence, and Gross Negligence.

7. Ms. Sanchez seeks statutory damages, actual damages, civil penalties, punitive damages,

2

injunctive relief, declaratory relief, costs and attorney fees for Defendant's violations of the
FDCPA, GBL § 349, and the common law claims stated herein, and any other relief that the
court deems fair and equitable.

## JURISDICTION AND VENUE

8.  This court has jurisdiction pursuant to the FDCPA, 15 U.S.C. § 1692k(d), and 28 U.S.C.
§ 1331.

9.  This Court has supplementary jurisdiction over Plaintiff's claims under GBL § 349 and
common law claims, pursuant to 28 U.S.C. § 1367 because they share a common nucleus of
operative fact with the federal claim and are so related to the federal claim as to form part of the
same case or controversy under Article III of the United States Constitution.

10. Declaratory relief is available pursuant to 28 U.S.C. § 2201 and 2202.

11. Venue in this district is proper under 28 U.S.C. § 1391(b) because the Defendants
transact business here and some of the conduct complained of occurred here.

## PARTIES

12. Yocasta Sanchez is a natural individual residing at 682 Academy Street, Apt. 45, New
York, NY 10034.

13. Ms. Sanchez is a consumer as defined by 15 U.S.C § 1692a(3).

14. Jamie Heiberger is an attorney and the principal of Heiberger & Associates P.C.,
who regularly engages in the business of collecting debts by various methods, which include
collection letters and litigating civil lawsuits for nonpayment of rent on behalf of her clients,
including Inwood Owner. Jamie Heiberger maintains her office at 589 8th Avenue, 10th Floor,
New York, NY 10018.

15. Jamie Heiberger is a "debt collector" as defined by the FDCPA, 15 U.S.C. § 1692a(6).

3

16. The Heiberger firm is a New York professional corporation with its principal place of business at 589 Eighth Avenue, 10th Floor, New York, NY 10018. It is a law firm regularly engaged in the business of collecting debts by verbal and written communications and by litigating civil lawsuits for nonpayment of rent on behalf of its clients, including Inwood Owner.

17. The Heiberger firm is a "debt collector" as defined by the FDCPA, 15 U.S.C. § 1692a(6).

18. Ehrlich is an attorney and partner at Heiberger & Associates P.C., who regularly engages in the business of collecting debts by collection letters, calls and litigating civil lawsuits for nonpayment of rent on behalf of his clients, including Inwood Owner. Ehrlich maintains his office at 589 8th Avenue, 10th Floor, New York, NY 10018.

19. Ehrlich is a "debt collector" as defined by the FDCPA, 15 U.S.C. § 1692a(6).

20. Inwood Owner is a New York Domestic Limited Liability Company with its principal place of business in New York, NY. It is owner of the property where Ms. Sanchez resides at 682 Academy Street, New York, NY 10034.

21. Dalan Management is the management company for the property where Ms. Sanchez resides. Dalan Management regularly engages in the business of collecting rent on behalf of Inwood Owner by collection letters, calls, and in-person interactions with tenants. Dalan Management also communicates with Inwood Owner and their attorneys regarding the initiation of lawsuits against tenants.

22. Dalan Management is a "debt collector" as defined by the FDCPA, 15 U.S.C. § 1692a(6).

23. Daniel Wrublin is the head officer of Dalan Management, who submitted an affidavit purporting to verify the validity of the debt and directed his attorneys to issue the initial communication and to continue the eviction proceedings. Wrublin as the head officer of Dalan

4

Management engages in the business of collecting rent on behalf of Inwood Owner by collection letters, in person interactions with tenants and initiating lawsuits to collect on alleged rental arrears.

24. Wrublin is a "debt collector" as defined by the FDCPA, 15 U.S.C. § 1692a(6).

25. All Defendants transacted business in the Southern District of New York during all times relevant to this complaint.

## FACTS RELEVANT TO ALL CLAIMS FOR RELIEF

26. In fall 2001, Ms. Sanchez and her son moved into the apartment located at 682 Academy Street, Apt 45, New York, NY 10034, a property owned by Inwood Owner, and operated by Wrublin and Dalan Management.

27. Ms. Sanchez and her son are both disabled and her only source of income is Supplemental Security Income (SSI) and Food Stamps.

28. Ms. Sanchez has been a participant in the Housing Choice Voucher Program and a recipient of a Section 8 subsidy administered by the New York City Housing Authority (hereinafter "NYCHA"), during her tenancy at Inwood Owner property.

29. The owner of the apartment, Inwood Owner, and Ms. Sanchez participate in the NYCHA Housing Choice Voucher Program, also known as Section 8. In the Section 8 program, the portion of the total contract rent that the tenant pays is limited to 30% of the household's adjusted income. To cover the remainder of the total contract rent, the owner receives a subsidy known as the housing assistance payment from the local public housing agency that administers the voucher. NYCHA pays part of the rent each month directly to the landlord for an eligible family, which has been given a Voucher, in accordance with regulations of the United States Department of Housing and Urban Development (HUD). Section 8 tenants are not responsible

5

for the portion of the rent covered by the housing assistance payment. 42 U.S.C. § 1437f; 24 C.F.R. § 982; *Dierdre Williams v. New York City Housing Auth.* (S.D.N.Y. Index No. 81-cv-1801).

30. The Defendants have made numerous attempts at collecting rent arrears, which Ms. Sanchez does not owe, including sending rent demand letters and initiating multiple eviction proceedings in New York County Housing Court. These repeated eviction actions have consisted of numerous written demands for rent that has already been paid by Ms. Sanchez, and for impermissibly seeking on numerous occasions to collect Defendant's non-receipt of the NYCHA Section 8 share of the rent from Ms. Sanchez. The Heiberger firm has represented Inwood Owner in prior eviction proceedings against other tenants and is aware of their client's history of filing such cases. Based upon the experience of The Legal Society and other legal services programs, the Heiberger firm is notorious for its repeatedly pursuing eviction non-payment proceedings against Tenants who do not owe rent.

31. On or about April 24, 2012, the Heiberger firm issued a notice to Ms. Sanchez that Inwood Owner had retained the firm to collect a debt of $2,112.27 for unpaid rent for the period of October 2011 through April 2012. She was given 3 days to pay or face eviction. (Exhibit "A").

32. On or about May 25, 2012, Jamie Heiberger signed a verified Housing Court petition on behalf of the Heiberger firm and as counsel for Inwood Owner. Defendants initiated a non-payment eviction proceeding against Ms. Sanchez in the Housing Part of the Civil Court of the City of New York, New York County under the clerk's index number L&T 66860/2012. The petition alleged she owed rental arrears in the amount of $1,458.06 for the months of January 2012 through May 2012. By signing, filing and serving the verified petition, Defendants

6

impliedly represented to Ms. Sanchez that an attorney had done a meaningful review of the facts and circumstances of her account.

33. Ms. Sanchez had paid her portion of the rent to Inwood Owner for the relevant months in question. But without the money to hire an attorney, Ms. Sanchez appeared in court six times before Inwood Owner and Heiberger firm discontinued the case on October 18, 2012, because she was not liable for any outstanding rent. (Exhibit "B").

33. Defendants had ample prior notice that Ms. Sanchez did not owe the amount alleged through the Housing Assistance Payments (HAP) contract they signed with NYCHA, repeated NYCHA notices regarding the amount of the tenant's rent portion, their own tenant rent ledger, and Ms. Sanchez's repeated claims to not owing the amounts via phone calls to Dalan Management, her Answer, and at the six court appearances.

34. On November 18, 2013, the Heiberger firm issued a notice to Ms. Sanchez that Inwood Owner had retained the firm to collect a debt of $1,459.37 for unpaid rent for the period August 2013 to November 2013 plus additional charges to recover money owed, if at all, by NYCHA to reimburse the owner for major capital improvements (MCI) to the building. (Exhibit "C"). The letter gave Ms. Sanchez three days to pay the alleged debt or face eviction. Based on a review of Ms. Sanchez's rental payment history, which was in their possession, the Heiberger firm and Inwood Owner were aware that Ms. Sanchez had paid her portion of the rent for the months in question. Further, because MCI improvements costs  cannot be charged directly to tenants and can only be assessed as rent increase after approval from the New York State Division of Housing and Community Renewal, Defendants were aware that they could not charge MCI arrearages to Ms. Sanchez.

35. On December 9, 2013, Jamie Heiberger signed the verified complaint on behalf of the

7

Heiberger firm and as counsel for Inwood Owner. Defendants initiated a non-payment of rent eviction proceeding against Ms. Sanchez in the Housing Part of the Civil Court of the City of New York, New York County under the clerk's index number L&T 90082/2013. The petition alleged rental arrears of $1,877.77 for the months of August 2013 to December 2013. By signing, filing and serving the verified petition Defendants impliedly represented to Ms. Sanchez that an attorney had done a meaningful review of the facts and circumstances of her account.

36. On December 23, 2013, Ms. Sanchez's attorney wrote to Ehrlich requesting that Defendants discontinue the case because Ms. Sanchez had paid her portion of the rent for the months in question. She stated that she had seen cancelled checks for those months and that Defendant Inwood Owner had provided Ms. Sanchez with a rental breakdown that acknowledged receipt of these payments. (Exhibit "D").

37. On January 22, 2014, Inwood Owner, by counsel Heiberger firm, discontinued the case. The stipulation of discontinuance signed by Ehrlich and so-ordered by the court states: "The within proceeding is discontinued as respondent has paid in full the tenant portion of the rent through January 31, 2014 and has a credit of $128.80 toward the February, 2014 tenant portion of $350. These payments were made prior to the institution of this proceeding." (emphasis added). (Exhibit "E").

38. In March 2014, Ms. Sanchez received a rent bill seeking over $2,500. Later that month, she received an April rent bill seeking nearly $3,000.

39. On March 31, 2014, to avoid more frivolous debt collection practices, counsel for Ms. Sanchez asked Ehrlich to advise Inwood Owner to correct its records and stop billing Ms. Sanchez for more than the tenant share of the rent. In their email exchange, Ehrlich stated that the NYCHA share would remain on the account until NYCHA made the adjustments, and

8

acknowledged that those charges were appearing on Ms. Sanchez's monthly rent bill, which informed her of the rent she was supposed to pay each month. Ms. Sanchez's counsel again explained that the billing system was faulty, that Ms. Sanchez should not be billed for far more than she owes each month, and that in the past, this billing practice had led to her being sued for money she never actually owed. Ehrlich replied, "Sure, my client will change it's (sic) billing just for your client". (Exhibit "F").

40. On November 10, 2015, the Heiberger firm mailed Ms. Sanchez a letter demanding $1,044.32 in rental arrears for the months of September 2015 to November 2015. (Exhibit "G"). The letter gave Ms. Sanchez three days to pay the alleged debt or risk eviction. Based upon a review of records from prior lawsuits between the parties and the rent ledger pertaining to Ms. Sanchez's tenancy, which both the Heiberger firm and Inwood Owner had access to, the Defendants were aware that Ms. Sanchez had paid her portion of the rent for the months in question.

41. Before commencing L&T 084736/15, Heiberger firm requested NYCHA's authorization to sue Ms. Sanchez for non-payment of rent as required by the Second Partial Consent Judgment in *Dierdre Williams v. New York City Housing Auth.* (S.D.N.Y. Index No. 81-cv-1801) ("Williams Consent Decree"), but NYCHA objected. (Exhibit "H") (stating in Paragraph 7 that NYCHA denied permission to commence the proceeding).

The Williams Consent Decree creates a procedure designed to prohibit Section 8 landlords from suing tenants who hold vouchers administered by New York City Housing Authority for unlawful grounds. Prior to commencement of a summary proceeding for nonpayment of rent, the owner must seek NYCHA's authorization to sue the tenant. The owner or their attorney must certify (a) the total amount owed, (b) an accurate breakdown of the source of the arrears, and (c)

9

that the landlord will not sue the tenant for the subsidized portion of the rent. If NYCHA does not timely respond or denies authorization, the owner must name NYCHA as a party to the lawsuit against the tenant.

When NYCHA reviewed the alleged debt and notified Heiberger Firm it was unlawful, that gave the Heiberger firm another reason to be aware that the debt was invalid. Heiberger firm disregarded this warning sign and commenced the lawsuit anyway.

42. On November 19, 2015, Ehrlich signed the verified petition on behalf of the Heiberger firm and as counsel for Inwood Owner. Defendants initiated a non-payment of rent eviction proceeding against Ms. Sanchez in the Housing Part of the Civil Court of the City of New York, New York County under the clerk's index number L&T 84736/2015. The petition alleged rental arrears of $668.32 for the months of October and November, 2015. By signing, filing and serving the verified petition Defendants impliedly represented to Ms. Sanchez that an attorney had done a meaningful review of the facts and circumstances of her account.

43. On December 10, 2015, the Heiberger firm received a letter addressed to Ehrlich from counsel for Ms. Sanchez disputing the character, amount, and legal status of the alleged debt and requested a verification of the debt. (Exhibit "I"). The letter informed Ehrlich and Heiberger Firm that an eviction proceeding to collect this debt would be frivolous and attached court records demonstrating that Inwood Owner's rent ledger misrepresents the debt. The Heiberger firm and Ehrlich still proceeded with litigation.

44. By decision dated July 25, 2016, the Civil Court granted Ms. Sanchez's motion for summary judgment and held that the rent demand issued by Heiberger firm dated November 10, 2015 was not a good faith estimate of the amount actually owed through that date, which was either 38 cents or at most $19.76. (Exhibit "J").

10

45. It is the regular and repeated practice of Defendants to maliciously, willfully, recklessly, wantonly and/or negligently ignore and refuse to follow the requirements of the FDCPA and state laws. This pattern of abusive practices by the Defendants has had a tremendous impact on the public at large, as it has been repeated in the past, and continues to be implemented, against many tenants.

46. The conduct of Defendants has caused Plaintiff past and future damage to Plaintiff's reputation as a tenant and ability to move from the subject apartment and secure alternative housing, past and future mental distress and emotional anguish, and other damages that will be presented to the trier of facts.

47. The conduct of Defendants has caused Ms. Sanchez particular angst and mental anguish because Defendant is diagnosed with Schizoaffective disorder, which has been exacerbated by the numerous fraudulent lawsuits. The threat of eviction and eviction proceedings is a threat of homelessness given Ms. Sanchez's limited income, the low payment standards for Section 8 voucher holders, the scrutiny by prospective landlords to tenants with eviction proceedings in tenant screening reports, and extremely low vacancy rate for apartments in New York City. Ms. Sanchez lived in a shelter with her son immediately prior to finding the subject apartment, and was therefore aware of the consequences of homelessness for herself and her child.

48. All actions taken by employees, agents, servants, or representatives of any type for the Defendants were taken in the line and scope of such individuals' (or entities') employment, agency, or representation.

## FIRST CLAIM FOR RELIEF
**Violations of the Fair Debt Collection Practices Act**

49. Plaintiff repeats and re-alleges and incorporates by reference the foregoing paragraphs.

11

50. The purpose of the FDCPA is "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e*); see also Hamilton v. United Healthcare of La., Inc.,* 310 F.3d 385, 392 (5th Cir. 2002) ("Congress, through the FDCPA, has legislatively expressed a strong public policy disfavoring dishonest, abusive, and unfair consumer debt collection practices, and clearly intended the FDCPA to have a broad remedial scope.").

51. Jamie Heiberger, Ehrlich and the Heiberger firm violated the following sections of the FDCPA: 15 U.S.C. §§ 1692c, 1692e, 1692d, 1692f.  The Defendant's violations include, but are not limited to, the following: engaging in conduct, the natural consequence of which is to harass, oppress or abuse any person; using false, deceptive or misleading representations or means in connection with the collection of a debt; misrepresenting the character, amount or legal status of the debt; misrepresenting the services rendered or compensation which may be lawfully received; threatening to take and actually taking action prohibited by law; using unfair or unconscionable means to collect or attempt to collect a debt; and collecting or seeking to collect any amount (including any interest, fee charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement crediting the debt or permitted by law; impermissibly applying Ms. Sanchez's payment of debts to disputed debts and failing to apply such payments in accordance with consumer's direction.

52. As a result of the above violations of the FDCPA, Jamie Heiberger, Ehrlich and the Heiberger firm are liable to Ms. Sanchez for her actual damages, statutory damages, costs and attorney fees.

## SECOND CLAIM FOR RELIEF
**Violations of New York General Business Law § 349**

53. Plaintiff repeats and re-alleges and incorporates by reference the foregoing paragraphs.

54. Defendants, Jamie Heiberger, Ehrlich, Heiberger firm, Wrublin, Dalan Management and Inwood Owner's, acts and practices set forth above also constitute violations of NY GBL § 349, which makes deceptive acts in the conduct of business, trade, commerce or the furnishing of a service in this state, unlawful, independent of whether these acts and practices constitute violations of any other law.

55. These deceptive acts and practices were committed in conduct of business, trade, commerce or the furnishing of a service in this state. The attempts to collect rent by Inwood Owner, and all the other Defendants on behalf of Inwood Owner, constitute the conduct of business and furnishing of service in New York State.

56. Each of these actions was consumer-oriented and involves misleading conduct that is recurring and has a broad impact upon the public, or, in the alternative, such misleading practices are the types that could easily recur because it is the business of Defendants to collect rental arrears, could potentially impact similarly situated tenants, and are therefore consumer-oriented and harmful to the public at large. All the Defendants have a regular pattern and practice of repeatedly seeking evictions against numerous tenants based on the same impermissible grounds. The Defendants' same violations of state statutes are recurring not only against Ms. Sanchez, but have occurred against numerous other tenants in the past and likely to occur in the future.

57. Defendants violated the GBL§ 349 by taking part in deceptive acts and unlawful

13

practices in the conduct of its business. Defendant's repeated pattern of attempts to evict Ms.
Sanchez on the basis of unpaid rent, which Defendant knew Ms. Sanchez did not owe,
constitutes deceptive and unlawful practices in the conduct of business.

58. Defendants acted willfully and knowing in its violations of GBL § 349. Defendants'
attempts to collect the debt were done willfully and knowingly, which consisted of, among other
things, Defendants repeatedly submitted rent due notices, demand letters, and eviction pleadings
that sought to impermissibly evict Ms. Sanchez, even after numerous dismissals of eviction
proceedings that were sought on the very same grounds, and dismissed for the same reason.
Defendants' actions are also willful and knowing because such abusive practices are repeatedly
and regularly employed by Defendants against other tenants of Inwood Owner and other
landlords.

59. Defendant Ehrlich acknowledged by email that Ms. Sanchez was billed for the NYCHA
Section 8 portion of her rent, explaining that because the charged remained on the account, they
would appear on the tenant's rent bill as well, because "that's how the system works." Ehrlich's
acknowledgement of this improper system of billing demonstrates that these violations were
done willfully and knowingly. It further demonstrates that Defendants' actions and practices
were implemented not solely with respect to Ms. Sanchez but system-wide, thereby being
consumer-oriented with a broad impact on the public. Further, the erroneous system allows for
these actions to easily recur as to Ms. Sanchez or any other tenant in the building.

60. Defendant's acts and practice was consumer-oriented, the acts and practice was
misleading in a material respect and Ms. Sanchez was injured as a result. Defendant's acts were
consumer-oriented because they involved the attempted collection of allegedly defaulted upon
rental payments, or debt. The repeated and regular acts and practices in attempting to collect

14

debts not owed by Ms. Sanchez, was misleading in a material respect, because they involved serving Ms. Sanchez with notices, demand letters, and court pleadings that alleged Ms. Sanchez owed amounts, which Defendant knew was not owed.

61. For these reasons, Plaintiff is entitled to actual damages, three times the actual damages up to $1000, costs and reasonable attorney's fees pursuant to GBL § 349(h), and declaratory judgment that Defendants' practices are deceptive as defined under § 349.

## THIRD CLAIM FOR RELIEF
**Malicious Prosecution**

62. Plaintiff repeats and re-alleges and incorporates by reference the foregoing paragraphs.

63. Plaintiff's cause of action for Malicious Prosecution is based upon Defendant, Jamie Heiberger, Ehrlich, Heiberger firm, Wrublin, Dalan Management and Inwood Owner's, repeated harassment and attempts to collect debt that Ms. Sanchez does not owe, by means of repeated eviction proceedings and other collection efforts.

64. Defendants commenced the housing court proceedings without probable cause and with malice or for improper purpose. A cursory review of Ms. Sanchez's file would have easily revealed that the actions had no potential merit. The eviction proceedings terminated in favor of Ms. Sanchez by stipulation to discontinue which acknowledged that she had paid her portion of the rent, yet Defendants decided to pursue repeated subsequent proceedings that were similarly dismissed. The lawsuits were a sham and objectively baseless.

65. Ms. Sanchez suffered interference with her person or property as a result of the housing court proceedings. Her health and medical condition has grown worse with the stress of constant harassment from Defendants. Ms. Sanchez's ability to relocate has been effectively terminated as a result of the repeatedly litigation and collection attempts on debt Plaintiff did not owe. Public

15

records of housing court cases are regularly reported to Tenant Screening Bureaus, which produce specialty credit reports for landlords when they are deciding whether or not to rent to specific tenants. These reports generally explain only that a case was filed and not the result of the case; therefore, even though these cases were decided in Ms. Sanchez's favor, their existence alone affects her ability to move to another apartment. She has spent numerous hours commuting to court for multiple cases of litigation.

66. As a result of the Malicious Prosecution, the Defendants are liable to Ms. Sanchez for injunctive and declaratory relief, and for compensatory damages, punitive damages, costs and attorney fees.

## FOURTH CLAIM FOR RELIEF
**Abuse of Process**

67. Plaintiff repeats and re-alleges and incorporates by reference the foregoing paragraphs.

68. Ms. Sanchez's cause of action for Abuse of Process is based upon Defendant's repeated improper eviction proceedings and collection attempts.

69. Defendants, Jamie Heiberger, Ehrlich, Heiberger firm, Wrublin, Dalan Management and Inwood Owner's, initiated regularly issued civil process compelling the performance or forbearance of some prescribed act. As a result of Defendant's actions, Ms. Sanchez had to repeatedly appear in court, prepare for litigation, and obtain assistance of counsel. Ms. Sanchez's ability to relocate and obtain housing has been severely hindered.

70. Defendants in activating process, were moved by a purpose to do harm without economic or social excuse or justification, and Ms. Sanchez did sustain injury to or an interference with her person or property. Her health and medical condition has grown worse with the stress of constant harassment from Defendants. Defendants continuing to repeatedly initiate eviction proceedings

16

and other collection efforts, when they knew it was impermissible from prior eviction proceedings and collection efforts, constitutes lack of economic or social excuse, or justification.

71. Defendant perverted the process by seeking some collateral advantage over Ms. Sanchez outside the legitimate ends of the process. Defendant's repeated impermissible eviction proceedings, and other collection attempts, even when they had been sought and failed in the past, establishes that Defendant perverted the process of the judicial proceedings by seeking the collateral advantage of evicting, or collecting the amounts from Ms. Sanchez, by means of continuous and repeated harassment. Moreover, Defendants pursued the eviction proceedings as an impermissible method to collect the Section 8 portion of the rent from NYCHA, because the eviction proceedings for a Section 8 voucher recipient requires notifying, subpoenaing, or naming NYCHA as a party to the eviction proceeding.  As a result of Defendant's Abuse of Process, the Defendant is liable to Ms. Sanchez for a injunctive and declaratory, compensatory damages, punitive damages, and attorney fees.

## FIFTH CLAIM FOR RELIEF
**Negligence per se**

72. Plaintiff repeats and re-alleges and incorporates by reference the foregoing paragraphs.

73. Defendants, Jamie Heiberger, Ehrlich, Heiberger firm, Wrublin, Dalan Management and Inwood Owner's, owed Ms. Sanchez a duty, or obligation, recognized by law.

    a.      Pursuant to the following provisions of New York Fair Debt Collection Practices Act § 601, no principle creditor, or its agent shall… knowingly collect, attempt to collect, or assert a right to any collection fee, attorney's fee, court cost or expense unless such changes are justly due and legally chargeable against the debtor; or… claim, or attempt or

17

threaten to enforce a right with knowledge or reason to know that the right does not exists;

b.      Pursuant to the following provisions of GBL § 349(a) Defendants have a duty, or obligation, recognized by law in desisting from deceptive acts and unlawful practices in the conduct of its business.

d.      Defendants owed Ms. Sanchez a duty, obligation, pursuant to FDCPA, which include those obligations, stated earlier, pursuant to 15 U.S.C. § 1692(d),(e),(f), and (h).

74. Defendants have breached the duty imposed by the statutory standard.

a.      Defendants knowingly attempted to collect a collection fee, attorney fees, court costs, that were not justly due and not legally chargeable against Ms. Sanchez.

b.      Defendants claimed, attempted and threatened to enforce a right to eviction against Ms. Sanchez, and obtain rent amounts,  with knowledge, or reason to know that the rights does not exist.

c.      Defendants committed deceptive acts and unlawful practices in the conduct of its business by repeatedly attempting to evict and collect on debts that was not owed to the Defendants.

d.      Defendants repeatedly sought to evict Ms. Sanchez for non-payment of the Section 8 portion of the rent in violation of federal Section 8 regulations.

75. A reasonably close causal connection existed between Defendant's conduct and the resulting injury. Defendant's repeated eviction lawsuits against Ms. Sanchez, on the same basis and grounds, are directly responsible for the stress and medical problems that arose as a result of the numerous cases and collection attempts, the complete elimination of Ms. Sanchez's ability to relocate, the humiliation and embarrassment of being repeatedly hauled into court, and all the

18

time and effort for proceedings Ms. Sanchez had to appear in, the time to prepare for litigation, and obtaining assistance of counsel.

76. There was damages to Ms. Sanchez, which resulted from Defendant's breach. The damage was the emotional distress, stress, and medical problems that arose for Ms. Sanchez, the complete elimination of her ability to relocate, the humiliation and embarrassment of no longer having access to credit, the inclusion of Ms. Sanchez's name to the tenant blacklist maintained by tenant screening bureaus, and all the time and effort for proceedings Plaintiff had to appear in, the time to prepare for litigation, and obtaining assistance of counsel.

77. Punitive damages is appropriate as Defendant's actions constitute egregious, malicious, tortuous conduct, performed in collusion between each other, by which Ms. Sanchez was aggrieved and such conduct was part of similar conduct aimed at the public generally. It is not just the sheer number of invalid eviction proceedings, and harassment, brought against Ms. Sanchez on the same grounds, but also the regular pattern and practice of bringing the same eviction actions for non-receipt of Section 8 portions of the rent, with full knowledge that as to its impermissibility, that makes it of serious public concern. Defendants conduct demonstrates a high degree of moral turpitude and wanton dishonesty as to imply criminal indifference to civil obligations which is aimed at the public.

## SIXTH CLAIM FOR RELIEF
### Gross Negligence

78. Plaintiff repeats and re-alleges and incorporates by reference the foregoing paragraphs.

79. Defendants, Jamie Heiberger, Ehrlich, Heiberger firm, Wrublin, Dalan Management and

80. Inwood Owner, so recklessly disregarded facts as to amount to gross negligence. When

19

Defendants maliciously pursued repeated collection efforts against Ms. Sanchez, with full knowledge as to its illegality, their actions evinces a reckless disregard for the rights of others or smacks of intentional wrongdoing.

81. Punitive damages is appropriate as Defendant's actions constitute egregious tortious conduct by which Plaintiff was aggrieved and such conduct was part of similar conduct aimed at the public generally. Defendants conduct demonstrates a high degree of moral turpitude and wanton dishonesty as to imply criminal indifference to civil obligations which is aimed at the public.

PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully prays that judgment be entered against the Defendant for the following:

A.      Actual damages, pursuant to 15 U.S.C. § 1692k(a)(2)(A), and N.Y. GBS. Law § 349(h).

B.      Statutory damages pursuant to 15 U.S.C. § 1692k, to N.Y. GBS. Law § 349(h).

C.      Compensatory damages, for the tort of Malicious Prosecution and Abuse of Process.

D.      Punitive damages, pursuant to N.Y. GBS. Law § 349(h), and for the torts of Negligence, Gross Negligence, Malicious Prosecution, and Abuse of Process.

E.      Costs and reasonable attorney fees pursuant to 15 U.S.C. § 1692k, N.Y. GBS. Law § 349(h), and New York Real Property Law § 234 and the residential lease.

F.      Injunctive relief barring Plaintiff from pursuing evictions against tenants based on non-receipt NYCHA Section 8 portion of the rent.

G.      Declaratory relief holding that all three non-payment eviction proceedings brought by Defendants against Ms. Sanchez were not owed by her and a declaration that all Defendants have committed the violations of law alleged in this action.

H.    Prejudgment and post judgment interest as allowed by law;

I.    Such other and further relief as may be just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38, Plaintiff demands a trial by jury as to all issues so triable.

Dated: November 8, 2016
      Kew Gardens, NY

                                   Respectfully Submitted,

                                   Tashi T. Lhewa, Esq.
                                   THE LEGAL AID SOCIETY
                                   Attorney for Plaintiff
                                   120-46 Queens Blvd.
                                   Kew Garden, NY 10415
                                   Phone: 718-286-2474
                                   Fax: 646-616-9422
                                   Email: ttlhewa@legal-aid.org

21