UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------X

YOCASTA SANCHEZ,                        :        16-cv-8677 (LAP)
                                        :
            PLAINTIFF,                   :        MEMORANDUM & ORDER
                                        :
                                        :
            v.                           :
                                        :
ROBERT C. EHRLICH, JAMIE L.             :
HEIBERGER, HEIBERGER & ASSOCIATES,      :
P.C., DANIEL WRUBLIN, DALAN             :
MANAGEMENT ASSOCIATES, INC., 682        :
INWOOD OWNER, LLC.,                     :
                                        :
            DEFENDANTS.                   :
------------------------------------X

LORETTA A. PRESKA, Senior United States District Judge:

    Plaintiff Yocasta Sanchez brings this action against Robert
C. Ehrlich Esq., Jamie L. Heiberger Esq., the law firm of
Heiberger & Associates, P.C., Daniel Wrublin, Dalan Management
Associates, Inc., and Inwood Owner, LLC, alleging that
Defendants engaged in unfair and deceptive debt collection
practices in violation of state and federal law.  Defendants
Robert C. Ehrlich Esq., Jamie L. Heiberger Esq., and Heiberger &
Associates, P.C. (collectively "Heiberger Firm") move to dismiss
the Complaint for failure to state a claim upon which relief can
be granted pursuant to Rule 12(b)(6) of the Federal Rules of

1

Civil Procedure. (See Mem. of Law in Supp. of Def. Mot. to Dismiss ("Def. Mot."), Feb. 13, 2017 [dkt. no. 38].)

## I. **BACKGROUND**

Plaintiff has lived in a property owned by Inwood Owner since the fall of 2001. (See Compl., Nov. 9, 2016 [dkt. no. 1] ¶ 26.) Throughout her tenancy, Plaintiff and Inwood Owner have participated in the Housing Choice Voucher Program and received Section 8 housing subsidies administered by New York City Housing Authority ("NYCHA"). (Id. ¶ 28.) Under Section 8, the portion of rent owed by Plaintiff is limited to 30% of the household's adjusted income. (Id. ¶ 29.) To cover the remainder of the total contract rent, the owner receives a subsidy known as the housing assistance payment from the local public housing agency that administers the voucher. (Id.) NYCHA pays part of the rent each month directly to the landlord for an eligible family, which has been given a Voucher, in accordance with regulations of the United States Department of Housing and Urban Development ("HUD"). (Id.) Section 8 tenants are not responsible for the portion of the rent covered by the housing assistance payment. (Id.); 42 U.S.C. § 1437f; 24 C.F.R. § 982. Plaintiff lives with a disabled son, and her only source of income is Supplemental Security Income ("SSI") and Food Stamps. (Compl. ¶ 27.)

Defendants Heiberger Firm have represented Inwood Owners in all unpaid rent notices and nonpayment proceedings related to Plaintiff.  (Id. ¶ 30.)  On or about April 24, 2012, the Heiberger Firm issued a notice to Plaintiff that Inwood Owner had retained the Firm to collect a debt of $2,112.27 for unpaid rent for the period of October 2011 through April 2012.  (Id.)  Plaintiff was given three days to pay or face eviction.  (Id.)  On May 25, 2012, Defendants initiated a nonpayment eviction proceeding against Ms. Sanchez in the Housing Part of the Civil Court of the City of New York, New York County, alleging owed rental arrears in the amount of $1,458.06 for the months of January 2012 through May 2012.  (Id. ¶ 32.)  Plaintiff had paid her portion of the rent to Inwood Owner for the relevant months in question.  (Id. ¶ 33.)  However, without the money to hire an attorney, Plaintiff appeared in court, pro se, six times before Inwood Owner and Heiberger Firm discontinued the case on October 18, 2012.  (Id. ¶ 33; id., Ex. B.)

In November 2013, Defendants commenced a second eviction proceeding.  (Id. ¶ 36.)  Defendants' complaint, dated December 9, 2013, alleged that Plaintiff owed rental arrears of $1,877.77 in unpaid rent for the months of August 2013 to November 2013.  (Id. ¶ 37.)  On January 22, 2014, Inwood Owner, by counsel Heiberger Firm, discontinued the case.  (Id.)  The stipulation of discontinuance, signed by Ehrlich and so-ordered by the

3

court, states: "The within proceeding is discontinued as respondent has paid in full the tenant portion of the rent through January 31, 2014 and has a credit of $128.80 toward the February, 2014 tenant portion of $350. These payments were made prior to the institution of this proceeding." (Id., Ex. E.)

In March 2014, Ms. Sanchez received a rent bill seeking over $2,500. (Id. ¶ 38.) Later that month, she received an April rent bill seeking nearly $3,000. (Id.) On March 31, 2014, to avoid additional debt collection practices, counsel for Plaintiff asked Defendant Ehrlich to advise Inwood Owner to correct its records and stop billing Plaintiff for more than the tenant share of the rent. (Id. at ¶ 39.) In their email exchange, Defendant Ehrlich stated that the NYCHA share would remain on the account until NYCHA made the adjustments and acknowledged that those charges were appearing on Plaintiff's monthly rent bill, which informed her of the rent she was supposed to pay each month. (Id.) Plaintiff's counsel again explained that the billing system was faulty, that Plaintiff should not be billed for far more than she owes each month and that in the past this billing practice had led to her being sued for money she never owed. (Id.) Ehrlich replied, "Sure, my client will change it's [sic] billing just for your client." (Id., Ex. F.)

On November 10, 2015, the Heiberger Firm demanded $1,044.32

in rental arrears for the months of September 2015 to November 2015.  (Id. ¶ 40; id., Ex. G.)  Prior to commencing an eviction proceeding, Defendants sought NYCHA's authorization to sue Plaintiff for nonpayment as required by the Second Partial Consent Judgment in Williams v. New York City Housing Authority, No. 81-cv-1801 (S.D.N.Y.)("Williams Consent Decree"), but NYCHA denied permission to commence the proceeding.  (Id. ¶ 41.) NYCHA reviewed the amount owed, the breakdown of the source of the arrears and the affirmation that the landlord will not sue the tenant for the subsidized portion of the rent under section 8, and notified Heiberger Firm that the eviction proceeding was unlawful, thus denying the authorization.  (Id.)

Defendants commenced a third proceeding on November 19, 2015, seeking arrears of $668.32 for unpaid rent.  (Id. ¶ 42.) By decision dated July 25, 2016, the Civil Court granted Ms. Sanchez's motion for summary judgment and held that the rent demand issued by Heiberger Firm, dated November 10, 2015, was not a good faith estimate of the amount actually owed through that date, which was either 38 cents or at most $19.76. (Id. ¶ 44; id., Ex. J.)  The nonpayment summary eviction proceeding was dismissed.  (Id.)  The court denied Plaintiff's request for sanctions finding that Defendants' actions did not show a pattern of frivolous conduct and there was no indication in the record that the rent was satisfied prior to the commencement of

the previous proceedings.

Here, Plaintiff states six claims for relief: (1) Defendant Heiberger Firm violated the Fair Debt Collection Practices Act ("FDCPA"), and Plaintiff seeks actual damages, statutory damages and attorney's fees pursuant to 15 U.S.C. § 1692, (id. ¶¶ 49-52); (2) Defendants committed deceptive acts and practices in a conduct related to business, trade, commerce, or the furnishing of a service in New York, and Plaintiff seeks actual damages, three times the actual damages up to $1,000, costs and reasonable attorney's fees pursuant to New York General Business Law § 349 ("N.Y. GBL § 349"), (id. ¶¶ 53-61); (3) Defendants' attempts to collect debt that Plaintiff did not owe through multiple eviction proceedings amounted to malicious prosecution, and Plaintiff seeks injunctive and declaratory relief, compensatory damages, punitive damages, costs and attorney fees, (id. ¶¶ 62-66); (4) these proceedings and collection attempts amount to Abuse of Process, (id. ¶¶ 67-71); (5) Defendants owed Plaintiff a duty pursuant to the New York Fair Debt Collection Practices Act 601 ("NYFDCPA") and N.Y. GBL § 349(a), and a violation of that duty amounts to negligence per se, (id. ¶¶ 72-75); (6) Defendants recklessly disregarded facts amounting to gross negligence, (id. ¶¶ 78-81.)

## II. **LEGAL STANDARD**

Upon a motion by a defendant, Rule 12(b)(6) permits a district court to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In considering such a motion, courts must accept all non-conclusory factual allegations as true and draw "all reasonable inferences in the plaintiff's favor." Goldstein v. Pataki, 516 F.3d 50, 56 (2d Cir. 2008) (quoting Chambers v. Time Warner, Inc., 282 F.3d 147, 152 (2d Cir. 2002)) (internal quotation mark omitted).

In accordance with the Supreme Court's decision Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), this Court applies a "plausibility standard," which is guided by "[t]wo working principles." Ashcroft v. Iqbal, 556 U.S. 662, 663 (2009). First, although "a court must accept as true all of the allegations contained in a complaint," that "tenet" "is inapplicable to legal conclusions," and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. at 678. "Second, only a complaint that states a plausible claim for relief survives a motion to dismiss," and "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw

on its judicial experience and common sense." _Id._ at 679;
_Harris v. Mills_, 572 F.3d 66, 71-72 (2d Cir. 2009).

In ruling on a 12(b)(6) motion, a court may consider the
complaint as well as "any written instrument attached to the
complaint as an exhibit or any statements or documents
incorporated in it by reference." _Zdenek Marek v. Old Navy
(Apparel) Inc._, 348 F. Supp. 2d 275, 279 (S.D.N.Y. 2004) (citing
_Yak v. Bank Brussels Lambert_, 252 F.3d 127, 130 (2d Cir. 2001)
(internal quotations omitted)).

## III. **DISCUSSION**

Def. Mot. argues that the Complaint should be dismissed for
several reasons:  (1) Plaintiff's Federal Debt Collection
Practices Act ("FDCPA") claim is time barred; (2) the Court
lacks subject matter jurisdiction to adjudicate Plaintiff's
pendent state law claims; or, in the alternative, (3)
Plaintiff's negligence per se and gross negligence claims should
be dismissed because Defendants had no duty to Plaintiff; (4)
Plaintiff has not pled a _prima facie_ case for abuse of process
for failure to show that Defendants' conduct fell outside the
legitimate ends of process; and (5) Plaintiff fails to state a
claim under N.Y. GBL § 349 because Plaintiff has not
sufficiently alleged that Defendants' conduct was consumer-

oriented conduct and aimed at the public at large.  (See Def.
Mot. at 4-12.)

### A.    Federal Debt Collection Practices Act

#### 1.    Statute of Limitations

Defendants allege that Plaintiff's FDCPA claim is barred by
the one-year statute of limitations.  (See Def. Mot. at 4.)  The
Court disagrees.  Under the FDCPA, "[a]n action to enforce any
liability created by this [subchapter] may be brought . . .
within one year from the date on which the violation occurs."
15 U.S.C. § 1692k(d).  Regarding the relevant accrual date for
the calculation of the FDCPA statute of limitations, the Court
of Appeals has held variously that the relevant date is either
the date of the issuance of a demand letter or, where an
unlawful restraining notice was sent to a bank, the date when
the bank froze the debtor's account.  Compare Wright v.
Zabarkes, 347 F. App'x 670, 671 (2d Cir. 2009), with Benzemann
v. Citibank N.A., 806 F.3d 98, 102 (2d Cir. 2015).

In Wright, the court found that the FDCPA's one-year
limitations period commenced when the rent demand letter and
validation notice were issued, thereby informing tenant of his
right to dispute the amount of unpaid rent.  Wright, 347 F.
App'x at 671.  Further, the court found that the claims were
time-barred where the events at issue—the issuance of the rent

demand letter and the validation notice—occurred over a year
before the complaint was filed.  Id.   More recently, in
Benzemann, a debt collector sent an allegedly unlawful
restraining notice to a bank, and the Court held that the FDCPA
violation did not occur when the notice was sent but rather
occurred when the bank froze the debtor's account, as prior to
the bank freezing the account Benzemann suffered no injury.
Benzemann, 806 F.3d at 99-102.  Accordingly, the Court held that
the statute begins to run when there was both a complete cause
of action and notice of the FDCPA violation.  Id. at 103.

Defendants assert that a "violation of the FDCPA 'occurs'
on the date when the rent demand was served," November 10, 2015,
(see Def. Mot. at 5) or, alternatively, when Defendants
commenced the 2015 housing court case by filing a Notice of
Petition on November 25, 2015.  (See Defs.' Reply Mem. of Law in
Supp. of Def. Mot. to Dismiss ("Reply Mem."), Apr. 7, 2017 [dkt.
no. 42].)  Defendants claim the "Summons and Complaint served
upon the Defendants included a filing date of 'December 8,
2016,'" and thus "this Federal Court case commenced on December
8, 2018 when the Summons and Complaint was actually issued and
filed by Plaintiff."  (Def. Mot. at 5.)  Defendants allege that
the date of service in the instant action, December 8, 2016,
surpasses the one-year statute of limitations, which began to
toll on either November 10, 2015--when the rent demand was

served--or November 25, 2015--when the Notice of Petition was filed.

Defendants' claim that service commences the action is without merit. (See Def. Reply at 1.) The Court of Appeals has reiterated that for purposes of the statue of limitations, a federal action is commenced when the Complaint is filed without any further requirements. See, e.g., Wheeler v. Standard Tool & Mfg. Co., 311 F. Supp. 1177 (S.D.N.Y. 1970); Kalican v. Dzurenda, 583 F. App'x 21, 23 (2d Cir. 2014) (holding "a complaint is deemed filed when the clerk of court receives it."). Therefore, it is not service but the filing of a complaint which commences a civil action. Fed. R. Civ. P. 3. After a complaint is filed it is submitted to the clerk of court for signature and seal, and the clerk issues the summons for service on the defendant(s). Fed. R. Civ. P. 4(b). The time limit for service is 90 days after a complaint is filed. Fed. R. Civ. P. 4(m). It is only at the end of such time that the complaint must be dismissed. Id.

According to the Complaint, Defendants as attorneys for landlord Inwood Owners, mailed Plaintiff separate debt collection letters for arrears owed, each requiring Plaintiff to pay within three days or forfeit possession of the premises to the landlord. (Compl. ¶ 31, 34, 40; id., Ex. A, Ex. C, Ex. G.)

These letters were issued on April 24, 2012, November 18, 2013, and November 10, 2015.  (Id.)

Here, Plaintiff filed electronically the Complaint, Request for Issuance of Summons, Civil Cover Sheet, and Request to Proceed In Forma Pauperis on November 9, 2016, which is reflected by the electronic date stamp on the Complaint, accessed through the Electronic Court Filing system.  (See, e.g., Compl. [dkt. no, 1].)  Therefore, although the first two letters and their subsequent nonpayment proceedings—April 24, 2012, and November 18, 2013—fall outside of the one-year statute of limitations, the third proceeding does not.  Here, the Court finds that the relevant start date for the statute of limitations is November 9, 2016, and thus Plaintiff's FDCPA claims were asserted properly within the one-year statute of limitations, using either accrual date proffered by Defendants—November 10, 2015, or November 25, 2015.  Accordingly, Plaintiff's causes of action arising under the FDCPA are not time barred, and the Defendants' motion to dismiss is denied.

### 2.   **Plaintiff has Sufficiently Alleged an FDCPA Claim**

Congress "enacted the FDCPA 'to protect consumers from deceptive or harassing actions taken by debt collectors[,]' Kropelnicki v. Siegel, 290 F.3d 118, 127 (2d Cir. 2002), with the purpose of 'limiting the suffering and anguish often

12

inflicted by independent debt collectors.' Russell v. Equifax
A.R.S., 74 F.3d 30, 34 (2d Cir. 1996)." Gabriele v. Am. Home
Mortg. Servicing, Inc., 503 F. App'x 89, 93 (2d Cir. 2012).  The
FDCPA prohibits the use of "any false, deceptive, or misleading
representation or means in connection with the collection of any
debt."  15 U.S.C. § 1692(e).  "The sixteen subsections of
section 1692(e) provide a non-exhaustive list of practices that
fall within the statute's ban." Bentley v. Great Lakes
Collection Bureau, 6 F.3d 60, 62 (2d Cir. 1993).  A debt
collection practice may violate the FDCPA even if it does not
fall within any of the subsections, Clomon v. Jackson, 988 F.2d
1314, 1318 (2d Cir. 1993), and a single violation of section
1692(e) is sufficient to establish civil liability under the
FDCPA, 15 U.S.C. § 1692(k); Finnegan v. Univ. of Rochester Med.
Ctr., 21 F. Supp. 2d 223, 228 (W.D.N.Y. 1998).  Additionally,
Plaintiffs need not prove the conduct was intentional.  Clomon,
988 F.2d at 1318.

   To determine whether a communication violates the FDCPA,
the Court of Appeals applies the "least sophisticated consumer"
standard, asking how the least sophisticated consumer would
understand the collection notice at issue. Ellis v. Solomon &
Solomon, P.C., 591 F.3d 130, 135 (2d Cir. 2010).  If the conduct
could "mislead a putative-debtor as to the nature and legal

status of the underlying debt" or could "impede a consumer's ability to respond to or dispute collection," a violation of the FDCPA is established. Gabriele, 503 F. App'x at 94.

Under the statute, debt collectors and their agents must not make a "false representation of the character, amount, or legal status of any debt." 15 U.S.C. § 1692(e)(2)(A). A misrepresentation may occur because the original creditor provided the debt collector with incorrect information. Lee v. Kucker & Bruh, LLP, 958 F. Supp. 2d 524 (S.D.N.Y. 2013). In Lee, the court found that the tenant had fully paid his rent, but the landlord and the landlord's agent erroneously informed the debt collector that the tenant had an outstanding balance. Id. at 526. The debt collector then sent a notice to the tenant, seeking to collect the alleged balance. Id. at 526-27. The court held that the debt collector, by falsely stating that the tenant's account was delinquent, made a false representation concerning the tenant's debt in violation of 15 U.S.C. § 1692(e). Id. at 528-29. Therefore, the statute "places the burden on the debt collector to avoid collecting debt improperly, including attempting to collect debt that is not actually owed." Id. at 531 n.2. Likewise, here, as in Lee, Plaintiff alleges that Defendants sent her a notice requesting a payment that she did not, in fact, owe, thereby misrepresenting

14

the character, amount and legal status of her debt. Accordingly, Plaintiff has adequately pled that Defendants violated Section 1692(e).

Additionally, debt collectors or their agents are prohibited from using "any false representation or deceptive means to collect or attempt to collect any debt." 15 U.S.C. § 1692(e)(10). Although the Court of Appeals held that where a tenant knew rent was rejected for fourteen months and the tenant was given thirty days to dispute the debt, a summary proceeding was neither unfair nor unconscionable, DiMatteo v. Sweeney, Gallo, Reich & Bolz, L.L.P., 619 F. App'x 7, 10 (2d Cir. 2015), here, the facts are distinguishable. In the instant case, Plaintiff had paid her portion of the legally regulated rent and was given only a three day notice before being threatened with eviction. (See Compl. ¶ 40.) Further, there were two prior proceedings of the same type, which were discontinued without Plaintiff's being liable for any unpaid rent, which would indicate that the November 2015 action was an "unfair or unconscionable means" to collect a debt in violation of the FDCPA. (See Compl. ¶ 5); 15 U.S.C. § 1692(f).

Moreover, where, as here, the debtor receives notice requesting a payment that he does not owe, such that the debt collector misrepresented the character, amount and legal status of the debt, the debtor has adequately pled a violation under

15

section 1692(e).  Wong v. Alt. Claims Mgmt., LLC, No. 17 Civ.
3133 (ER), 2017 WL 5635533, at *3 (S.D.N.Y. Nov. 21, 2017).  The
Court, therefore, finds that Plaintiff has alleged sufficiently
a violation of the FDCPA.  Accordingly, Defendant's motion to
dismiss on this ground is denied.

### B.    Pendent State Law Claims

Because Plaintiff has alleged sufficiently a claim under
the FDCPA, the Court has subject matter jurisdiction over
Plaintiff's state law claims because they "derive from
a common nucleus of operative facts."  See 28 U.S.C. § 1367
(West); Chaluisan v. Simsmetal E. LLC, 698 F. Supp. 2d 397, 400
(S.D.N.Y. 2010) (quoting Achtman v. Kirby, McInerney & Squire,
LLP, 464 F.3d 328, 335 (2d Cir. 2006)).  Therefore, Defendants'
argument that Plaintiff's claim under N.Y. GBL § 349 is not a
proper, independent basis for federal court jurisdiction is
denied as moot.  (See Def. Mot. at 3-4.)  Accordingly, the Court
will address Defendants' objections to Plaintiff's state law
claims.

### 1.    Gross Negligence

Defendants argue that the Court should dismiss Plaintiff's
gross negligence claim because Defendants owed Plaintiff no
duty.  (See Def. Mot. at 8.)

Under New York law, "a plaintiff must establish three
elements to prevail on a negligence claim: (1) the existence of
a duty on defendant's part as to plaintiff; (2) a breach of this
duty; and (3) injury to the plaintiff as a result thereof."
Aegis Ins. Servs., Inc. v. 7 World Trade Co., 737 F.3d 166, 177
(2d Cir. 2013) (quoting Alfaro v. Wal-Mart Stores, Inc., 210
F.3d 111, 114 (2d Cir. 2000)).  A showing of gross negligence
further requires "an indifference to present legal duty and
utter forgetfulness of legal obligations."  Doe v. N.Y.C. Dep't
of Soc. Servs., 649 F.2d 134, 143 n.4 (2d Cir. 1981).  Thus,
defendants are grossly negligent when they "[have] reason to
know of facts creating a high degree of risk of physical harm to
another and deliberately [act] or [fail] to act in conscious
disregard or indifference to that risk."  Poe v. Leonard, 282
F.3d 123, 140 n.14 (2d Cir. 2002).  Moreover, gross negligence
has been defined as "the degree of neglect arising where there
is a reckless indifference to the safety of human life or an
intentional failure to perform a manifest duty to the public, in
the performance of which the public and the party injured have
interests."  Int'l Mining Corp. v. Aerovias Nacionales de
Colombia S.A., 393 N.Y.S.2d 405, 407 (N.Y. App. Div. 1977)
(citing 41 N.Y. Jur. Negligence § 28 now 79 N.Y. Jur. Negligence 2d
§ 39 (1989)).

First, "[t]he threshold question in any negligence action is: does the defendant owe a legally recognized duty of care to plaintiff." In re Sept. 11 Litig., 280 F. Supp. 2d 279, 290 (S.D.N.Y. 2003).  In New York, "the existence of a duty is a legal, policy-laden declaration reserved for judges." Id. Courts traditionally "fix the duty point by balancing factors, including the reasonable expectations of parties and society generally, the proliferation of claims, the likelihood of unlimited or insurer-like liability, disproportionate risk and reparation allocation, and public policies affecting the expansion or limitation of new channels of liability." Id.

Here, the Court finds that, although the Complaint fails to allege a duty based on the relationship between the Plaintiff and Defendants, the Complaint alleges sufficiently a statutory duty under N.Y. GBL § 349.  First, although "professionals, such as lawyers and engineers, by virtue of their training and expertise, may have special relationships of confidence and trust with their clients," Murphy v. Kuhn, 682 N.E.2d 972, 974 (N.Y. 1997) (citation omitted), "[a]n attorney does not owe a duty of care to his adversary," Trepel v. Dippold, No. 04-CIV-8310(DLC), 2006 WL 3054336, at *6 (S.D.N.Y. Oct. 27, 2006) (citing Aglira v. Julien & Schlesinger, P.C., 631 N.Y.S.2d 816, 819 (N.Y. App. Div. 1995).  "[A]bsent fraud, collusion, malicious acts, or other special circumstances, an attorney is

not liable to third parties, not in privity, for harm caused by professional negligence." U.S. Fire Ins. Co. v. Raia, 942 N.Y.S.2d 543, 545 (N.Y. App. Div. 2012). Moreover,

> relevant decisions by New York courts make abundantly clear that an attorney does not owe a duty of care to an adversary . . . courts have consistently acknowledged "the well-settled principle that an attorney for one party to litigation is not liable, as a matter of law, for the negligence of the opposing party's attorney." Aglira v. Julien & Schlesinger, P.C., 214 A.D.2d 178, 183, 631 N.Y.S.2d 816 (N.Y. App. Div. 1995); McLaughlin, 688 F.Supp. at 968 ("the general rule is that an attorney owes no duty to third parties for acts committed in the good faith performance of his obligations to his clients") (citing Newburger, Loeb & Co. v. Gross, 563 F.2d 1057, 1080 (2d Cir. 1977)).

Crews v. City of Nassau, 612 F. Supp. 2d 199, 205 (E.D.N.Y. 2009).

Although the Complaint fails to allege privity between Plaintiff and Defendants sufficient to create a duty under the standard for professional negligence, taken as true, the Complaint sufficiently alleges a statutory duty of care on Defendants' part as to Plaintiff, pursuant to N.Y. GBL § 349. Under New York law, where a statutory scheme is aimed at protecting a distinct class of persons from a particular harm, the statute may create an additional standard of care benefiting those persons. Barnes v. Stone-Quinn, 606 N.Y.S.2d 485, 486-87 (N.Y. App. Div. 1993). Indeed,

> [i]t is a well-settled rule in this State that where an ordinance [or statute] for the protection or

> benefit of individuals prohibits the doing of acts or
> imposes a . . . duty, the neglect to obey the
> prohibition or to perform the duty is some evidence of
> negligence to be considered by a jury in an action
> brought by one for whose protection the statute was
> enacted to recover for any injuries of the character
> which it was designed to prevent, proximately produced
> by such disobedience or neglect." (Carlock v.
> Westchester Light. Co., 268 N.Y. 345, 349; accord,
> Monroe v. City of New York, 67 A.D.2d 89, 99.).

Id.; see also Elliott v. City of N.Y., 747 N.E.2d 760, 762 (N.Y.

2001) (finding "as a rule, violation of a state statute that

imposes a . . . duty constitutes negligence per se"). N.Y.

G.B.L. § 349 was designed "to protect consumers from various

forms of consumer fraud and deception." Bildstein v. MasterCard

Int'l Inc., 329 F. Supp. 2d 410, 413 (S.D.N.Y. 2004); see also

N.Y. Gen. Bus. Law § 601. Therefore, the Complaint alleges

sufficiently that N.Y. G.B.L. § 349 sets a standard of care by

prohibiting specific practices, such as those alleged by

Plaintiff, and provides a private right of action to injured

parties.

However, although a statutory duty exists under N.Y. G.B.L.

§ 349, the Court finds the Complaint fails to allege the

additional, heightened element required to support a claim of

gross negligence. Gross negligence, used interchangeably with

willful negligence, differs "in kind, not only degree, from

claims of ordinary negligence. It is conduct that evinces a

reckless disregard for the rights of others or 'smacks' of

intentional wrongdoing." Colnaghi, U.S.A., Ltd. v. Jewelers
Prot. Servs., Ltd., 611 N.E.2d 282, 284 (N.Y. 1993).  Here, the
Court finds that the Complaint fails to allege sufficiently a
degree of neglect demonstrating a reckless indifference to the
safety of human life or an intentional failure to perform a
manifest duty to the public.  Aerovias, 393 N.Y.S.2d at 407
(citing 41 N.Y. JUR. NEGLIGENCE § 28 now 79 N.Y. JUR. NEGLIGENCE 2d
§ 39).  Accordingly, the motion to dismiss the claim for gross
negligence is granted.


### 2.    Negligence Per Se

     Defendants additionally assert that Plaintiff's claim for
negligence per se must be dismissed because Plaintiff has failed
to show that Defendants breached a duty of care otherwise
imposed by statute or common law.  (Reply Mem. at 5-6.)  As
discussed above, the Court finds that Plaintiff sufficiently
alleges a duty of care on Defendants' part as to Plaintiff,
pursuant to N.Y. § GBL 349.  Accordingly, here, based on the
Court's previous analysis, the threshold question in any
negligence action, whether Defendant owes a recognized duty of
care to Plaintiff, is satisfied.  (See supra Part.III.B.1.)

     In assessing a claim for negligence, "[v]iolation of a
State statute that imposes a . . . duty constitutes negligence

per se" and establishes the duty and breach elements of a negligence claim. See Elliot, 747 N.E.2d at 762. A plaintiff still must establish causation. See Dance v. Town of Southampton, 467 N.Y.S.2d 203, 206 (N.Y. App. Div. 1983) ("Negligence per se is not liability per se, however, because the protected class member still must establish that the statutory violation was the proximate cause of the occurrence.").

Plaintiff's claim of negligence per se is based in part upon Defendants' alleged statutory violations of N.Y. GBL § 349(a) and the FDCPA pursuant to 15 U.S.C. §§ 1692(d), (e), (f), and (h). (Compl. ¶ 73; Def. Mot. at 10.) Plaintiff argues that these state and federal statutes impose a duty of care on Defendants. (Id.) Specifically, Plaintiff alleges that N.Y. GBL § 349 sets a standard of care by prohibiting specific practices, such as consumer fraud and deception, and providing for a private right of action and that the FDCPA creates a standard of care because it was designed to protect consumers from abusive debt collection practices and it lists specific prohibited practices. (Id.) Plaintiff additionally asserts that creditors and debt collectors owe debtors a duty of reasonable care in the collection of debts, citing Hawkins-El v. First American Funding, LLC, 891 F. Supp. 2d 402, 407 (E.D.N.Y.

2012), aff'd, 529 F. App'x 45 (2d Cir. 2013).  (Def. Mot. at
10.)

Plaintiff claims Defendants are negligent per se for
breaching these statutory standards when they (1) knowingly
attempted to collect a collection fee, attorney fees, and court
costs that were not justly due and not legally chargeable to
Plaintiff; (2) claimed, attempted, and threatened to enforce
Inwood Owners' rights to eviction and obtain rent amounts, with
knowledge or reason to know that the rights did not exist;  (3)
committed deceptive acts and unlawful practices in the conduct
of its business by repeatedly attempting to evict and collect on
debts not owed to the Defendants; and (4) repeatedly sought to
evict Plaintiff for non-payment of the Section 8 portion of the
rent in violation of federal Section 8 regulations. (Compl.
¶ 74.)

First, as discussed previously, the Court finds that
Plaintiff alleges sufficiently a statutory duty of care pursuant
to N.Y. GBL § 349 sufficient to support a claim of
negligence per se.  See supra Part.III.B.1.; (Compl. ¶ 73).
Second, the FDCPA was designed to "eliminate abusive debt
collection practices by debt collectors."  15 U.S.C. § 1692(e).
The Court of Appeals has recognized that abusive debt collection
practices can include a landlord's lawyer's illegitimate
attempts to collect rent from tenants.  Romea v. Heiberger &

Assocs., 163 F.3d 111, 118 (2d Cir. 1998).  Moreover, Plaintiff
is a member of the class the FDCPA was designed to protect, (see
Compl. ¶¶ 1-7, 28, 73) and the FDCPA sets a standard of care by
listing specific obligatory and prohibited practices, 15 U.S.C.
§§ 1692(d)-(f), (h).

Additionally, apart from statutory sources of duty, federal
courts applying New York common law have held that creditors and
debt collectors owe debtors a duty of reasonable care in the
collection of debts.  Hawkins-El, 891 F. Supp. 2d at 412, aff'd,
529 F. App'x 45  (finding duty but no breach by debt collector);
Colo. Capital v. Owens, 227 F.R.D. 181, 191-92 (E.D.N.Y. 2005)
(citing Russell v. Equifax, 74 F.3d at 32).  Accordingly, because
the Court finds a statutory duty on Defendants' part as to
Plaintiff and Defendants do not contest that the Complaint
sufficiently pleads the remaining elements of the fifth cause of
action, Defendants' motion to dismiss Plaintiff's negligence per
se claim is denied.

### 3.   Abuse of Process

Defendants assert that Plaintiff failed to state a prima
facie case for abuse of process because the mere commencement of
a civil action does not constitute abuse of process, Defendants
were engaged in a private transaction with Plaintiff, and
Defendants' purpose was within the legitimate ends of initiating
process.  Accordingly, Defendants argue that Plaintiff's abuse

of process claim must be dismissed. (Def. Mot. at 11-12; Reply Mem. at 9-10.)

In New York, "a malicious abuse-of-process claim lies against a defendant who (1) employs regularly issued legal process to compel performance or forbearance of some act (2) with intent to do harm without excuse of justification, and (3) in order to obtain a collateral objective that is outside the legitimate ends of the process." Savino v. City of N.Y., 331 F.3d 63, 76 (2d Cir. 2003) (quoting Cook v. Sheldon, 41 F.3d 73, 80 (2d Cir. 1994)). Further, to support a claim for abuse of process, the process employed must entail some unlawful interference with person or property. Walentas v. Johnes, 683 N.Y.S.2d 56 (N.Y. App. Div. 1999). New York applies a one-year statute of limitations for abuse of process claims. N.Y. C.P.L.R. § 215; Beninati v. Nicotra, 657 N.Y.S.2d 414, 415 (N.Y. App. Div. 1997). The statute of limitations begins to run when "the last of the [underlying] proceedings . . . [is] concluded." Benyo v. Sikorjak, 858 N.Y.S.2d 215, 218 (N.Y. App. Div. 2008). Accordingly, the Court will consider all three housing court proceedings that Defendants commenced against Plaintiff in assessing Plaintiff's abuse of process claim.

In support of Plaintiff's claim for abuse of process, Plaintiff asserts that Defendants initiated improper eviction proceedings and collection attempts by seeking "some collateral

advantage over [Plaintiff] outside the legitimate ends of process," which include attempting to evict Plaintiff, pressure her into paying rent that she did not owe, and collect the Section 8 portion of rent from NYCHA.   (Compl. ¶¶ 69-71; Def. Mot. at 17-18.)   Plaintiff asserts that Defendants' actions required her to appear in court repeatedly, hindered her ability to relocate, and worsened her medical condition. (Compl. ¶ 70.)

The Court finds that Plaintiff has not made a prima facie showing that Defendants' conduct amounts to abuse of process. Under New York law, abuse of process requires that a defendant act with an intent to do harm without excuse or justification. Mangino v. Inc. Vill. of Patchogue, 808 F.3d 951, 958 (2d Cir. 2015) (internal quotation marks omitted).   Further, "even if malice or vindictive motive is shown, where . . . the process . . . was used for the purpose for which it was intended . . . an action for abuse of process does not lie."   Klass v. Frazer, 290 F. Supp. 2d 425, 427 (S.D.N.Y. 2003).   Further, the complaining party must allege that process was improperly used after it was issued.   Curiano v. Suozzi, 469 N.E.2d 1324, 1326-27 (N.Y. 1984).   Plaintiff makes no such claim here.

The facts presented are insufficient to create an issue of fact that Defendants engaged in a misuse of regularly issued legal process for a purpose not justified by the nature of that process.   Although the housing court determined that Plaintiff

was not liable for rent, by issuing the three day notice and commencing a proceeding for unpaid rent, Defendants engaged in the proper process for recovering rent.  Further, despite dismissing Defendants' claims, that court found that Defendants' filing of their petition was not frivolous.  (Def. Mot., Ex. A.)

Because there is no showing that Defendants actually employed the proceeding for purposes outside the legitimate ends of process, Defendants' motion to dismiss Plaintiff's abuse of process claim is granted.  Dobies v. Brefka, 710 N.Y.S.2d 438, 440-42 (N.Y. App. Div. 2000).

### 4.   N.Y. General Business Law § 349 Claim

Defendants also move to dismiss Plaintiff's claim under N.Y. GBL § 349.  Defendants argue that Plaintiff fails to state a claim because Defendants' conduct was purely private and Plaintiff has not pled sufficient facts showing that Defendants' conduct created a broad impact on the public at large. Defendant further argues that Plaintiff has not shown that Defendants' conduct "is identical in the commencement of all of their actions."  (Def. Mot. 10-11; Reply Mem. at 6-9.)

N.Y. GBL § 349 bars a business from engaging in deceptive acts or practices.  N.Y. Gen. Bus. Law § 349(a).  To plead a prima facie case under N.Y. GBL § 349, a plaintiff must show that a defendant engaged in an act or practice that is deceptive

or misleading in a material way and that plaintiff has been injured as a result. Varela v. Inv'rs Ins. Holding Corp., 615 N.E.2d 218, 219 (N.Y. 1993). Both affirmative misrepresentations and omissions may qualify as deceptive or misleading acts or practices. In re Sling Media Slingbox Advert. Litig., 202 F. Supp. 3d 352, 359 (S.D.N.Y. 2016).

"An action under GBL § 349 is not subject to the pleading-with-particularity requirements of Rule 9(b) and need only meet the bare-bones notice-pleading requirements of 8(a)." Pelman ex rel. Pelman v. McDonald's Corp., 396 F.3d 508, 511 (2d Cir. 2005). Under N.Y. GBL § 349, the threshold question is whether the charged conduct is consumer-oriented. Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A., 647 N.E.2d 741, 744 (N.Y. 1995). The conduct need not be repetitive or recurring, but the defendant's acts or practices must have a broad impact on consumers at large. Id. Thus, "[p]rivate contract disputes, unique to the parties . . . would not fall within the ambit of the statute." Id. Accordingly, a plaintiff may meet this threshold by showing the action is not unique to the two parties, was not private in nature, and was not a "single shot transaction" such that it potentially could affect similarly situated consumers. Id. at 745.

If a claim surpasses this threshold, a plaintiff may establish a prima facie case by showing "that defendant is

engaging in an act or practice that is deceptive or misleading in a material way and that plaintiff has been injured" as a result.  Id. at 744.  An objective definition of deceptive acts and practices are those "likely to mislead a reasonable consumer acting reasonably under the circumstances."  Id.  To recover compensatory damages, a plaintiff "must show that the defendant engaged in a material deceptive act or practice that caused actual . . . harm."  Id.

New York courts, interpreting consumer-protection statutes, have given tenants private rights of action against their landlords.  23 Realty Assocs. v. Teigman, 624 N.Y.S.2d 155 (N.Y. App. Div. 1995).  An apartment dweller is a consumer of housing and may assert New York City consumer protection law.  Travieso v. Gutman, Mintz, Baker & Sonnenfeldt, P.C., No. 94 CV 5756 (JBW), 1995 WL 704778, at *7 (E.D.N.Y. Nov. 16, 1995).

Because a claim under N.Y. GBL § 349 is governed by a three-year statute of limitations, Pelman ex rel. Pelman, 396 F.3d at 510, the Court considers several transactions.  The November 2013 demand and housing court proceeding from November 2013 fall within the scope of activity the Court may consider.  Accordingly, the Complaint does not simply recite a conclusory allegation based upon a single transaction.

Although Plaintiff asserts a claim on her own behalf, this Court finds the pleading sufficient to withstand a motion to

dismiss considering the lower pleading standard applied to
Plaintiff's claim.  Plaintiff has made the requisite showing
that Defendants' conduct affected other, similarly situated
consumers.  The Complaint alleges that there is a pattern and
practice of Defendants' commencing housing court proceedings
against Section 8 recipients for rent they do not owe.  (Compl.
¶ 13.)  Furthermore, such allegations constitute a material
claim.  A material claim involves information that is important
to consumers and, hence, likely to affect their choices, or
conduct.  Bildstein, 329 F. Supp. at 414.  Here, Defendants'
continued demand for rent might potentially cause tenants to pay
rent not owed, thus directly affecting their choices and
conduct.  Accordingly, because the Complaint alleges adequately
that Defendants "engaged in a material deceptive act or
practice," such acts or practices were "consumer-oriented," and
Defendants do not contest Plaintiff's allegation that this
conduct actually harmed her, Plaintiff has alleged adequately a
claim pursuant to N.Y. G.B.L. § 349, and Defendants' motion to
dismiss Plaintiff's § 349 claim is denied.

## IV. CONCLUSION

For the foregoing reasons, Defendants' motion to
dismiss is DENIED in part and GRANTED in part.  Specifically,
Defendants' motions to dismiss Plaintiff's claim for negligence

per se is DENIED.  Defendants' motions to dismiss Plaintiff's

claim for gross negligence, is GRANTED. Defendants' motion to

dismiss Plaintiff's claim for abuse of process is GRANTED.  The

motions to dismiss Plaintiff's claims under the Federal Fair

Debt Collection Practices Act and New York General Business Law

§ 349 are DENIED.

Counsel shall confer and inform the Court by letter no

later than April 13, 2018 how they propose to proceed.


SO ORDERED.


Dated:  New York, New York
        March 29, 2018

_____
LORETTA A.  PRESKA
Senior United States District Judge